MAXWELL, J.,
specially concurring:
¶ 18. I agree with the majority that our supreme court has recently signaled that simultaneous representation of a State’s witness, even in an unrelated domestic matter, creates a per se actual — and presumptively prejudicial — conflict of interest. Kiker v. State, 55 So.3d 1060, 1067 (¶ 19) (Miss.2011) (citing People v. Thomas, 131 Ill.2d 104, 137 Ill.Dec. 1, 545 N.E.2d 654 (1989); Commonwealth v. Hodge, 386 Mass. 165, 434 N.E.2d 1246 (1982); People v. Stewart, 126 A.D.2d 943, 511 N.Y.S.2d 715 (N.Y.App.Div.1987)). This is apparently so even in cases like this one where there is no objective evidence of prejudice.
¶ 19. But while I find reversal is proper, it is not lost on me that this case— particularly from a criminal defense lawyer’s perspective — is a prime example of the old saw that “no good deed goes unpunished.” With that said, I emphasize that, after review, I have found nothing— other than a bit of subjective Monday morning quarterbacking by Yarbrough’s PCR counsel and the majority — to show that defense counsel’s representation of Yarbrough was in any way inadequate, as far as his actual defense of the case goes. Indeed the evidence is otherwise.
¶ 20. What the record shows is that Yarbrough’s attorney, who was representing Yarbrough for free I might add, negotiated a capped plea deal, calling for a guilty plea to an assault charge, and dismissing three pending cocaine charges. This agreement limited Yarbrough’s sentencing exposure to twenty years, far less than the over two hundred years he faced without this attorney’s help. And even after Yarbrough rejected this favorable deal, the pro bono defense attorney zealously represented him at trial, with the jury indicating at one point it was deadlocked, before continuing its deliberations and ultimately convicting Yarbrough of aggravated assault on a law enforcement officer.
¶ 21. Still, even though there is not the slightest objective hint that Yarbrough’s attorney pulled any punches, I agree with the majority that we must reverse. Under Kiker, the admitted lack of warning to Yarbrough about the potential downside of dual representation (even if none is perceived by the defense attorney) requires we find a per se actual conflict of interest that Yarbrough had not knowingly and intelligently waived. Kiker, 55 So.3d at 1067 (¶ 19). And this is seemingly so even though the attorney had disclosed to Yar-brough that the officer was one of his clients, and there is no actual objective showing of prejudice.
¶ 22. Obviously, the defense attorney, who the circuit court found had capably represented Yarbrough, was without the guidance of the supreme court’s holding in Kilter, which was decided four years after Yarbrough’s trial. Yet we are still bound to apply Kilter’s dictates and find a per se actual conflict of interest arose — even in the face of the incredible irony that it was the very relationship between the defense attorney and officer that Yarbrough originally saw as a potential benefit when choosing this particular defense attorney to represent him.
GRIFFIS, P.J., BARNES AND FAIR, JJ., JOIN THIS OPINION.